7-2059 Biochemics, Inc. v. Axis Reinsurance Company Good morning, Judge Thompson. May I reserve one minute for rebuttal? Yes. Sir, could you pull the microphone closer? Thank you. Got it. I'm Steve Schreck, and Chair, this is Jane Guvermont. We represent the insurers, the defendants below, Biochemics and John Maziz. In 2012, the SEC brought a civil action against Biochemics and Maziz alleging securities acts violations. Axis denied coverage. Could you start back in May of 2011? Because one thing that was troubling me as I was reading all of this is that when you got this notice of investigation back in 2011 that clearly put the insured on notice that there was some type of investigation underway for alleged securities violations, why didn't you submit something to your other insurance carrier? The record is silent on that, Your Honor, but it's not uncommon for small companies to not understand that an investigative order that says we're investigating possible violations that may have occurred doesn't constitute a claim. But they went out and hired a lawyer. Well, because they needed a lawyer to defend the action, but that doesn't mean that they understood what their insurance policy said. Certainly, if they did understand it, they would have put that carrier on notice. But, so... There's some kind of obligation to read your policy. There are lots of cases in which very similar circumstances, many of them are cited in my brief, the Raytheon case that this court decided, something like that happened, the All-America case. This happens with some regularity. But when the subpoena came in a few days later carrying the same number and demanding all of these documents, including documents specific to Mr. Macy's, I don't know if I'm pronouncing that right. Macy's, but yes. I just don't understand why that didn't put someone there on notice that the SEC was investigating possible alleged improprieties. The letter that accompanied the subpoenas says, this is not an indication that the SEC is alleging any wrongdoing or is it a reflection on any person. So, I can understand why Mr. Macy's looks at that document and says, which is a subpoena to biochemics by the way, not a subpoena to Mr. Macy's until 2012, and says this doesn't have anything to do with me in terms of this being a claim under an insurance policy. Are you saying it's clear that it's not a claim? I think it constitutes a claim under the AXIS policy in order for AXIS to deny coverage for the 2012 lawsuit. There has to be a claim for a wrongful act alleged in 2012, the lawsuit, that is interrelated with a wrongful act that's alleged prior to 2012. Going back to just the 2011 SEC order, are you saying that it is clear that it is not a claim alleging a wrongful act? It does not allege. Our position is that it's a claim in that it is a demand for relief, but it's not a claim that alleges a wrongful act. Are you saying that's clear that it's not? I'm saying that the Third Circuit and the Tenth Circuit have said... I understand that. I'm just asking you, is your position that it's clear that it's not? That the order and the subpoenas issued pursuant to the order are not claims. Yes. What happens if it's ambiguous whether it is or isn't? That's black letter law that ambiguities are construed against the insurer. Right, and that hurts you here, right? No, I don't believe it does. Why would that make it a claim in 2011? It has to be a claim for an alleged wrongful act. In other words, it's ambiguous whether it is that. I don't think... Wouldn't most insurers want us to construe it so that it would be? How has an insured helped by construing that 2011 order from the SEC to be something that doesn't trigger any obligations by the insurer? I realize how it doesn't help you if we take that because of the timing. But in general, wouldn't the principle be that if it's ambiguous, that insureds would want us to conclude that that SEC thing qualifies as a claim alleging a wrongful act? Or put differently, if it made the claim under the other carrier, wouldn't you want it construed as a wrongful act? I think there's a difference between a claim, which is defined in the policies, and a claim for a wrongful act. And we don't have a claim for a wrongful act until 2012. There's nothing in the policy that says claim for a wrongful act, right? What you have is the interrelated clause that says if a claim arises from the same wrongful act, then they're the same. So there's no requirement that either bear a label saying I'm wrongful act A. You get the breadth of protection when that original investigative order comes down. You don't know exactly what the wrongful act is, but you know you're covered for it and you're covered for anything that turns out to arise out of it, if it's connected. If it isn't, you're not covered. So it's a retrospective judgment that provides actually more protection for the insured. I don't believe that that's the way the Tenth Circuit in muscle form or the Third Circuit in... Let's put it this way. I think what we're getting at is if when your company went out and hired a lawyer in response to getting the investigative order, and the lawyer had said, hey, first thing you should do is check with your insurance carrier, and they did that and they had coverage at the time on a policy just like this, you would be making exactly the opposite arguments here today about how to interpret that policy because that would provide your client with the full breadth of protection that a claims-made policy would, which is to continue to cover later things that arise that in retrospect are based on the same wrongful act. Only if they are based on the same wrongful act. Sure, in fact, but we don't need... You wouldn't be arguing that there has to be a label coming with the investigative order, and only if there's an identified wrongful act can you capture that later. Insurance companies make that argument all the time, Your Honor, that a subpoena, in fact, is not... it's a claim, but it's not a claim for a wrongful act. Sure, the insurance company would be making exactly the opposite argument. Yes. But I think our point is that if there's any ambiguity here in interpreting how these clauses work, the law tells us to resolve the ambiguity more or less against the insurance company. That actually, in this case, cuts against you. I don't believe it does cut against us, because... At that point, I mean, maybe I'm just missing... I just think, indisputably, that point cuts against you. Because if we construe it in favor of the insured, that means we're going to have to construe the type of thing the SEC said in 2011 as the type of thing that fits within the language under the policy, because insureds, in general, would want it to. And that would have hurt you here, because your lead argument is, don't worry about what happened in 2011, none of that has to do with me. Well, you have to take ambiguity in the context of the particular case, and this... Well, I've already said that. That's exactly the issue. I don't know that there's any case suggesting that, depending on the timing of when the insured is seeking coverage or duty to defend, that determines how we're going to read the policy, as opposed to a general principle that we would read policies in a manner that would favor insureds, rather than this particular... Otherwise, we would construe the policy differently, depending on when you sought to bring your claim. And that can't be right. Well, but you're construing the 2012 AXIS policy. The SEC complaint is unquestionably a claim, and therefore the only way in which AXIS can deny coverage is to find an interrelated wrongful act which was alleged prior to the policy. In this case, prior to the policy, there is an SEC investigative order which says we are investigating possible violations that may have occurred. Start with the undisputed point that the investigative order was a claim. Then, years later, they bring the suit. And the question is, does that suit arise out of any wrongful act that was connected with the original claim? Don't we now ask the question, this later suit is the same claim, if, in fact, it has as a common nexus any fact connected with the prior claim? That's correct. Doesn't it? Don't we now know that the suit, in fact, arose directly out of the investigation? No, you don't know that when you're comparing the... Right now, today, don't we know that? But this is a duty-to-defend case, and the duty-to-defend gets decided at the outset of the case by comparing the 2012 complaint... So how about when the suit was filed then? Wasn't it obvious then that the... The complaint was filed in December of 2012. At that time, when biochemists and Mr. Massey's lawyer sat down, wasn't it pretty obvious that that suit, that complaint, arose out of the investigative order? I don't think that you could... That's exactly the conclusion that... ...the September 2011 subpoena and looked at what that was targeted at. It's a subpoena that asks for documents, and at the same time it asks for documents that's accompanied by a letter that says, we are not, we, the SEC, are not alleging that anybody did anything wrong or that this is an indication, is a reflection on any person. I think it's a little... The duty-to-defend, as you say in your brief, is broad and is triggered by the possibility of liability. And I just, I think we're having a hard time trying to figure out why something would not have been triggered once you received the notice. The answer is that that's an analysis under the prior policy, and we are... The 2012 case comes during the access policy, so you look at the access policy, you say that there is a claim, you then go to the interrelated wrongful acts provision, and you try to determine whether it's the same claim. In Raytheon, this court said it was, but in O'Merica, which comes after Raytheon, that's the SJC decision, they say it's not the same claim, even though they are very similar. If the 2011 SEC order had been issued in 2012, and you had sought to get your current insurance carrier to defend you in it, could you have? I think we would have, if I had been representing them, we would have tendered this to them, but as in many of the cases we cited, insurance companies respond by saying it's a claim, but it's not a claim for a wrongful act. What would you have said back? What would I have said back? As a good lawyer. Well, once the 2012 complaint comes, I don't have to worry about it. I'm asking if the 2011 order had actually been filed in 2012. Wouldn't you have said to Access, you need to defend me with respect to everything I have to do in response to this order? I would have asked Access to defend. Yeah, and your argument would have been that that order plausibly could be read to be a claim alleging a wrongful act, alleging an allegation of wrongdoing. Right, but that doesn't... because I'm the insured. So all we're saying is if all that's true in 2012, it's equally true in 2011, and if it is equally true in 2011, you have a problem, insofar as then what happens in 2012 can be said to be related to what happened in 2011. May I just answer? Yes, please. Thank you. In 2012, there is a new lawsuit, and so you look at that lawsuit under the Access policy, and you say, is it a claim? It is a civil action. It's a claim. And then in order for Access to say it's not covered because of conduct that occurred pre-policy, you go to the interrelated wrongful acts exclusionary language. They happen to put it in a limits of liability section, but it's exclusionary language. And then the analysis is, as in Raytheon, as in All-America, as in the Mass Appeals Court case in Redlands, you compare the allegations that took place pre-policy and the allegations that are in the 2012 complaint that we're asking them to defend, and as we've argued, there aren't allegations in the 2011 complaint because it's not a complaint. It simply says we are investigating possible violations that may have occurred and we're not accusing anybody of any wrongdoing. And then the case law makes clear, and even this court's decision in Raytheon, which is the only case I'm aware of that addresses this in the First Circuit, you can't say that because the two claims are similar or they may have arisen out of the same conduct, you actually have to look at the specific allegations that are alleged and in the words of the First Circuit, there has to be substantial overlap between the two. And then I think even All-America, which comes later, and it's the SJC's pronouncement on interrelatedness, if there are differences, that's enough so that the 2012 complaint is a new complaint. So does that logic seem to say that there is, under this policy, no coverage at all for SCC investigative orders? Because they're a standard form order, so if I follow your logic, Axis would always be able to say, in connection with all SCC orders, it's not a claim for a wrongful act, so there's no coverage. And as we pointed out, Your Honor, the insurance companies make that argument, we pointed that out in our brief, insurance companies make that argument all the time. Sometimes they win and sometimes they lose. So you're saying it's a case where they win on that? I believe the... If you can't think of one now, you too can submit a 28-J letter within five days if you can find something. Thank you. May I sum up, or would you prefer to hear from my sister? Pardon me? May I sum up in 30 seconds, or... Okay, 30 seconds. Well, the Sixth Circuit and the Tenth Circuit have held that if a regulatory body is investigating, is conducting an investigation, and isn't alleging wrongful acts, as the SCC did here, then there is no claim for a wrongful act. And under America in particular, but also Raytheon, Judge Brown's decision in... Judge Young's decision in Brown v. AIG, there has to be substantial overlap between the allegations and the two proceedings. And when you have a proceeding that doesn't allege any wrongful acts, then the exclusion can't apply. And the one thing that I did want to address was that even if the court were to conclude that the title in Ray Biokinics creates overlap, that shouldn't relieve Axis from defending Maziz, who was a separate insured and not served with anything constituting a subpoena or a claim or a lawsuit until the Axis policy. Thank you. Good morning, Your Honors. May it please the court, my name is Melinda Margolis. I'm here for Axis Reinsurance Company. I think the court has it exactly right. The cases that are being relied on by biochemics and Maziz to establish coverage are a line of cases that say when an investigation does not allege a wrongful act, the insuring agreement is not triggered at all. Right? That's the line of cases they're relying on to establish an inconsistent position that says we want the court to find that we're entitled to have our insurance carrier pay our loss. Were the orders in those cases any different than the order here? In all of these cases there are distinctions. In some cases you have a CID. In some cases you have an investigative order. But what did the lower court have before it in this case? Let me just make sure I understand what you just said. Take this SEC order. Yes. Is it your client's position that had that order been dated May 2012 instead of May 2011, there would be coverage for it under the Axis policy, even though it didn't identify a particular wrongful act? Our position is that it does identify particular wrongful acts. Our policy covers... There would have been coverage in 12. We're just trying to get an answer to the question. Oh, yes. Yes, it's an investigative order. Our policy defines investigative order as a D&O claim. It's a claim against an insured. Biochemics or medicines is an insured. And it was first made during our policy period. We did not come on risk with this insured until November 13, 2011. So the focus of our case is this was a claim first made prior to November 13, 2011. You're about to say that the SEC order is a claim for a wrongful act? Yes. If you could explain that. So the SEC investigative order, May 5, 2011, our definition of D&O claim says proceeding commenced by investigative order. The investigative order that the insured had at that time and followed by all of these 11 subpoenas that were served pursuant to it said, the SEC has information that says John James has been previously banned from serving as a director or officer of a company selling securities. John James has previously paid penalties in connection with a violation in a case called Vasoactive Pharmaceuticals. The company, the SEC, has information that tends to show that from January of 2009 and going forward, Biochemics and its directors and officers, and they named John James by name in the first paragraph of the order, has been engaging in schemes and artifices to defraud its shareholders on three basic types of conduct. One is misrepresenting the valuation of Biochemics. Two is misrepresenting the business prospects of Biochemics, including drugs and tobacco. I understand where it's clearly a claim. Your policy says investigative orders are claims. Because I understand that your duty to defend is triggered by a claim alleging a wrongful act. Our insurance agreement has a couple of different words. It says, in connection with a wrongful act, we will cover loss arising from a D&O claim for a wrongful act against an insured where it's first made against such insured during the policy period. There are a whole line of cases we cite that talk about if the plain language of the policy talks about coverage for an investigation or coverage for a subpoena, as our policy does specifically address, those are prospective in nature. And the investigation is a claim about the conduct alleged or the possibility of the alleged conduct. Those are the cases we cite called Envoy or Weaver or Patriot. So it's not just a claim. The investigative order itself is, per se, a claim for a wrongful act as far as triggering the duty to defend? I believe under this language that we have in this access policy and that order, absolutely. Well, the language in the policy is a claim alleging a wrongful act. A claim for a wrongful act. No, that's the coverage for loss. The duty to defend, the policy also imposes upon access from, maybe unless it's quoted. Well, it said a wrongful act is defined as an actual or alleged act or omission of statement or misleading statement. Right, because the policy also imposes upon access, this is quoted from the appendix in the blue brief, quote, the right and duty to defend any claim made against the insurers alleging a wrongful act. Right. So there are a number of different words talking about looking. This is the duty to defend. Right. Is there some other provision talking about the duty to defend? The coverage comes from the insuring agreement. So the duty to defend flows from the insuring agreement as well. But I believe this is an allegation. There's a provision in the policy saying there's a right and duty to defend. Right. Any claim made against the insurers alleging a wrongful act. Right. And we agree that this is alleging a wrongful act. The claim, the order alleges a wrongful act? It alleges the possibility of wrongful conduct, which courts have found in the cases we cite, is an allegation of wrongful conduct. And your position as an insurance company is that that's correct? It is. Okay. On this language, in this policy, in this circumstances, the only reason AXIS is here today is because this insurer did not notify Excel of this claim. They make a number of other arguments, and I'd like to address them. One is if this informal order of investigation is a claim for a wrongful act, as it says in our policy, the insurer argues every single subpoena pursuant to that order has to be split off as a separate claim. And we can only look for the duty to defend at a single subpoena. I posit to this court, those single subpoenas under the discussion you're talking about could never trigger the insuring unit standing on their own. They're looked at as a whole. It's one claim by the SEC first made against the insured in May of 2011. Additionally, MS-IS cannot be ---- In terms of the investigative order, is it your position that any investigative order would trigger a duty to defend, or is it something, I mean, from the SEC, or are you saying that it is the peculiar allegations in this particular order that would have triggered the duty? The allegations in this order were before the court below when they ruled in AXIS's favor. In the instance where there's some sort of document that falls within our definition of claim and there's no wrongful acts anywhere that we can even point to, I'm not sure AXIS would agree that that is a trigger of their duty to defend. But in this case, we have the alleged conduct. We know that the claim is making an investigation into that conduct. The definition of claim contemplates ---- What is the conduct? Misrepresentation to shareholders from 2009 on in connection with the valuation of the company, the company's business prospects, including their drugs and development, and their agreements with other companies. And just so I get it, even though the SEC, unlike what it does in its complaint where it actually alleges that, or a plaintiff's complaint in the suit where it alleges that, the fact that the SEC is identifying the fact that even though it is not itself alleging that occurred and is merely investigating it, you think that is properly read as a claim alleging the wrongful act? I do agree with that because the policy contemplates that kind of prospective coverage. You're saying in the third definition of our proceeding commenced by subpoena, where it has been identified that an individual or an entity is an individual or entity against whom a more formal proceeding may be brought. So in order to grant this investigative coverage and in order to grant this subpoena coverage, the court sees that in other cases that have this type of language, the court says the claim is for the wrongful acts that are believed to have occurred or they're suspected to have occurred, that it's enough to say it's a possible allegation of wrongful conduct. So the order specifically says the commission has information tending to show a possible violation of the securities acts by A, B, and C. And you're saying that's an allegation? Yes, I think it is under this policy. Let me ask you a question that goes back to something else we were asking about, and that's how you construe ambiguities in insurance policy. The two possible approaches we were talking about earlier is one is you just look at the policy, ask which resolution of the ambiguity would most generally in most situations favor the insured and go that way. An alternative that I think opposing counsel is advocating is that if an insurance company drafts an ambiguous clause, then that ambiguity in any given case gets resolved against the insurance company, however it best benefits the insured in that case. Are you aware of any case law that addresses which of those two interpretive approaches is correct? I think what the case law instructs the court to do is it says you can't accept a proposition by an insured that is asking this court to take inconsistent readings of the same policy language. What this insured is saying is we didn't have coverage under our understanding of what Excel provided. So we got this new coverage from Access and we're asking for coverage. We believe it's covered under that. But we don't want Access to deem it interrelated back because there are no wrongful acts. So they're relying on a line of cases that say investigations have no wrongful acts to state the proposition that they deserve loss under our policy because their claim alleges no wrongful acts and you can't tie it together. And so that's a fundamental inconsistency in what they're proposing. I don't think that's quite their position. I thought they were saying simply that what happened in 2011 was not alleging a wrongful act. They're not saying what happens afterwards is not alleging a wrongful act. The 2012 complaint they think is alleging a wrongful act. That is true, but they're also asking for us to pay their costs associated with responding to the subpoena in Mazuz. They say subpoena was first the subject of a claim when he got his first subpoena. So they want the investigation coverage, but they want to prevent us from interrelating the claims by saying those earlier pieces didn't allege any wrongful acts. Suppose they say, whoops, we were a little greedy, our reach was too far, so we don't want coverage. You're right, we don't get coverage for responding to the investigative order or to the 2011 subpoena. We only get coverage, though, for the 2012 action. That has not been the argument they've made before the court below or before this court, but I would say this claim was first made in Axis's view in May of 2011. If you're applying our language and you're applying the facts that were presented on the record to this court, and I would also add, this is one singular claim. From the beginning of the time SEC conducted the investigation all the way to the enforcement order, it's one timeline of events. It goes over a few policy years because that's how long these things take, but it's one single claim by the SEC. Subpoenas are issued. Lawyer is hired. The 300,000 pages of documents are produced to the SEC. Then our policy incepts. Six more months go by. Six different people are deposed. In June of 2012, the SEC says, we are recommending an enforcement action against your client, John Maziz. We are recommending an enforcement action against your client, Biochemics. And a few months later, that enforcement action is filed. So this is one claim by the SEC all the way through. If we go out into the interrelated wrongful acts, it's clearly the same wrongful acts or related wrongful acts. It's one scheme to defraud 70 different shareholders. It's from 2009 to 2012, but we're well within the boundaries set by Raytheon. Same claimant, same temporal nexus, same common nexus of fact, certainly a series of causally related acts, errors, or omissions. So we're well within the precedent to say this is a claim first made prior to our policy based on that investigation. And it's the SEC all the way through. It's Maziz and Biochemics. It's the same shareholders all the way through. It's not like the cases they're pointing to where there's this claim. Like All America, there's a claim five years earlier by a single claimant. And then later there's a class action, and the court says those aren't interrelated. They're two temporally different. There's different people suing and so forth. So these are clearly related claims under our Deamer Clause, and it accesses you one single claim that predated our policy period. So if I'm understanding you correctly, you're saying their interpretation is wrong. This was an allegation of a wrongful act, and everything is interrelated thereafter. Hence, if your policy had been in effect in 2011, they'd be covered for everything under that policy. I believe that is the case, and I also believe if we tried to take the position they're taking and said, okay, there's a new retention every time you receive a subpoena. Okay, there's a new limit every time you got a new type of claim from this one single claim. That's just not how a claims-made policy works, and it's not how the policy should work in this case. As I understand your logic, your logic would be if they are correct that this investigative order does not make an allegation of a wrongful act, and neither did the September 2011 subpoena, then at most they could be arguing for coverage beginning in December 2012. They could make that argument, I suppose, but they didn't make that argument to the court below, and we have a definition of claim that is not restricted just to civil proceedings commenced by complaint. It's commenced by complaint, or commenced by investigative order, or commenced by subpoena targeting individual and short. So in order for the court to accept their premise, you have to toss out those other two definitions. I want to go back to a question Judge Thompson asked. I'm still not clear. Is your argument that an SEC order, because it meets the definition of claim, triggers the duty to defend? Or is your argument that this SEC order, because of the particular content of this order, satisfies the obligation to have a duty to defend because it alleges a wrongful act, and that the allegation of a wrongful act is the language just catechoted? Is that the position? That is the position, because I... The second of the two that I... The second of the two that you said, because in this claim you have a definition of claim that includes investigative order, but you don't have an investigative order that's simply blank about what's at stake or what's happening here. You have an investigative order that sets forth what the conduct is that's being investigated, and the whole concept of providing investigative coverage gives rise to the idea that a wrongful act can be something that's contemplated as against the insured. And there are a number of cases that hold that same thing, and I believe that that's the case in this policy, on these facts before the court. And just to pin it down, the fact that the order says that there are no allegations of wrongdoing, their argument is that that language takes it out of it being wrongful conduct. I think they're making... Oh, excuse me. Go ahead. I believe they're making that argument for the purpose of trying to defeat the Demer Clause, but they're not making that argument for the purpose of getting costs related to their investigation. Regardless, just the merits of the argument itself, what is your response to that? Since the order says there are no allegations of wrongdoing, how does it fit within the Demer Clause, within the clause saying that in order for it to be a claim that would trigger the duty to defend, it must be a claim that is alleging a wrongful act? I believe that the policy contemplates that investigations and subpoenas can be such that they allege a wrongful act to trigger the duty to defend because the... Even though the claim says it is not making allegations of wrongdoing? I believe that this claim does set forth the conduct, even though they're saying it's what we're investigating you for, these are the allegations of the SEC. They're not allegations set forth in a complaint, but if you read it only in that one lens, then there's no investigative coverage at all. The definition of claim contemplates that an investigation can be, this is what we suspect you of doing and are investigating you for. That's our position. Okay, thank you. Most of the discussion has been about whether the order, the investigative order, is a claim. And as I pointed out, the Third Circuit and the Tenth Circuit say with a letter like the one the SEC said, we're not saying there's any wrongdoing, that isn't a claim. But our argument is also that even if it is a claim, there's a separate claim under the lawsuit, there's a claim under the 2012 policy. So for access to deny coverage, it has to show that it's an interrelated wrongful act. And to do that, it has to go through the kind of analysis that the court went through in All-America and it has to ask specific questions. Who was making the misrepresentations? Were they to the same people? Were they about the same products? None of that can be done here because the subpoenas in the order don't say it. Thank you. Thank you.